IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERARD DEPTULA, | : | CIVIL NO. 1:15-CV-2228 |
| | : | |
| Petitioner, | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| LORETTA LYNCH, et al., | : | |
| | : | |
| Respondents. | : | |

**MEMORANDUM ORDER**

**I.    Introduction**

Following a conference call with counsel,[1] we have determined that the petitioner, has been placed in removal proceedings, and has been detained pre-removal for more than 12 months while these immigration proceedings have progressed. With the passage of more than one year in immigration detention, the petitioner has come before this court on a petition for writ of habeas corpus, (Doc.1.), seeking an individualized bail consideration. In these circumstances the United States Court of Appeals for the Third Circuit has directed that basic considerations of due process now require that the petitioner receive prompt, individualized bail consideration, at a

---

[1] We commend all counsel for the candid and cooperative approach which they have taken to this litigation, a combination of candor, advocacy and cooperation which was displayed throughout our conference call.

hearing where the government bears the burden of proving that the petitioner's continued detention is necessary to fulfill " 'the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.' " <u>Chavez-Alvarez v. Warden York Cnty. Prison</u>, 783 F.3d 469, 475 (3d Cir. 2015). Accordingly, in accordance with the guidance provided to us by the court of appeals through this opinion and order we prescribe the process by which the petitioner will receive this bail consideration from an Immigration Judge, while we retain the authority to conduct our own individualized bail consideration, if necessary, as part of this court's federal habeas corpus jurisdiction.

## II.     Discussion

One of the statutory and constitutional duties conferred upon this court is the responsibility to address federal habeas corpus petitions filed by immigration detainees who challenge their immigration detention as unconstitutionally excessive. Over the past several years, case law in this field has evolved significantly, providing far greater clarity to the courts regarding the benchmarks they should apply when discharging this important responsibility, a duty rooted in our constitution.

Most recently, in <u>Chavez-Alvarez v. Warden York Cnty. Prison</u>, 783 F.3d 469 (3d Cir. 2015), the court of appeals has provided us with an analytical paradigm to apply when assessing these immigration excessive detention claims in a pre-removal

context. As the court explained in outlining the legal terrain in this field:

> Before 1996, significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes. Demore v. Kim, 538 U.S. 510, 518–19, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Congress fixed this problem by enacting section 1226(c), expanding the range of serious crimes for which the Government was required to detain convicted aliens. Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond. Id. at 521, 123 S.Ct. 1708. The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the Constitution. Id. at 531, 123 S.Ct. 1708. However, as we discuss below, we read Demore as also recognizing that there are limits to this power. Diop, 656 F.3d 221; Leslie v. Attorney Gen. of the United States, 678 F.3d 265 (3d Cir.2012). When the Supreme Court upheld the constitutionality of the law in Demore, it also gave us insight into how, from a due process perspective, section 1226(c)'s allowance of detention without bail worked. The Court reiterated the fundamental idea that aliens are protected by constitutional due process. Demore, 538 U.S. at 523, 123 S.Ct. 1708 (citing Reno v. Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). But, it put the alien's issue in perspective, saying " '[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.' " Id. at 521, 123 S.Ct. 1708 (quoting Mathews v. Diaz, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)). The Court went on to say that applying " 'reasonable presumptions and generic rules' " to groups of aliens—for purposes of due process—can be consistent with the idea that aliens can be treated differently. Id. at 526, 123 S.Ct. 1708 (quoting Flores, 507 U.S. at 313, 113 S.Ct. 1439); see also Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). The Court, in essence, concluded that Congress lawfully required the Attorney General to make presumptions of flight and dangerousness about the alien solely because he belonged to the group of aliens convicted of the types of crimes defined in section 1226(c).

Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 472 73 (3d Cir. 2015).

Thus, the court in Chavez-Alvarez recognized that Demore held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore Court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal which typically should not exceed 6 months. Thus, while Demore addressed the due process issues that arise from the fact that, for certain criminal aliens, detention pending removal is mandatory, it is also clear that courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process.

Further, the court in Chavez-Alvarez provided us with clear guidance in assessing the reasonableness of the duration of any mandatory immigration detention. This determination entails a balancing test, and while noting that "[b]y its very nature, the use of a balancing framework makes any determination on reasonableness highly fact-specific," Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 474 (3d Cir. 2015), the court enjoins us that there are several guideposts which we must consider. First, in a case where an alien is prosecuting a good faith challenge to his or her removal from the United States, the appellate court held that, " beginning sometime after the six-month time frame considered by Demore, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's]

liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute. We conclude that the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary." Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015).

In prescribing this one-year time frame beyond which the presumption of detention is sufficiently eroded that an individualized bail consideration is necessary, the appellate court also defined what showing the government must make in order to justify the continued detention of the petitioner. According to the court, the immigration statute " 'implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.' " Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015). Further, once "detention becomes unreasonable, the Due Process Clause demands a hearing, *at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute*." Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011)(emphasis added.)

Applying Chavez-Alvarez to the facts of this case, we conclude that the petitioner has made a *prima facie* showing justifying an individualized bail hearing. The petitioner's legal challenge to his removal is presented in good faith, the initial benchmark cited by the court in Chavez-Alvarez. Indeed, the court of appeals has stayed the petitioner's removal while it considers this matter. It is also undisputed that the current duration of the petitioner's detention now exceeds one-year a period of time which Chavez-Alvarez found to be presumptively excessive. Having reached this judgment regarding whether the petitioner is entitled to a bail hearing, we turn to the question of what process should be afforded to the petitioner.

Finding that an individualized bail hearing is appropriate in this case, we will defer to the Immigration Judge in the first instance, and refer this matter to the Immigration Judge for a bail determination. Indeed, in Chavez-Alvarez, the appellate court suggested that, in many instances, this initial bail determination can, and should, be made by the Immigration Judge, applying the constitutional benchmarks outlined by the courts. Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 n.12 (3d Cir. 2015). This guidance, in turn, is consistent with other case law in this field, where federal courts have frequently referred these bail questions to Immigration Judges in the first instance. See, e.g., Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942 (9th Cir. 2008); Reid v. Donelan, 991 F. Supp. 2d 275 (D. Mass. 2014);

Chen v. Aitken, 917 F. Supp. 2d 1013 (N.D. Cal. 2013); Sengkeo v. Horgan, 670 F. Supp. 2d 116 (D. Mass. 2009); Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008).

Yet, while we are "[m]indful of the deference which should be accorded in the first instance to agency decision-making processes," Leslie v. Holder, 865 F. Supp. 2d 627, 631 (M.D. Pa. 2012), a factor which weighs in favor of allowing an Immigration Judge to make this initial bail determination, we also recognize that we have an independent responsibility in this case to determine whether conditions of release may be set in this matter. Indeed, this court has in a number of instances conducted bail review hearings in immigration habeas matters. Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009)(two years detention, court schedules hearing to review case). In still other instances, the remedy imposed by the court has been an order directing the outright release of the alien.) See, e.g., Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Nunez-Pimentel v. U.S. Dep't of Homeland Security, No. 07-1915, 2008 WL 2593806 (M.D. Pa. June 27, 2008.)

The authority of this court to set conditions of release for a petitioner in a federal habeas corpus proceeding springs from several well-established legal sources.

Settled case law has long recognized that the power to set bail in habeas proceedings is a legal and logical concomitant of the court's habeas corpus jurisdiction. In fact, our authority to act in these matters has been long recognized, and carefully defined, by the courts which have held generally in habeas corpus matters that the court may consider bail motions and have prescribed legal standards for such relief, stating that:

> [C]ourts that have been faced with requests for bail prior to ruling on a habeas petition have developed standards requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both. See, e.g., Eaton v. Holbrook, 671 F.2d 670, 670 (1st Cir.1982); Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir.1981); Calley v. Callaway, 496 F.2d 701, 702 (5th Cir.1974).

Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986).

This settled principle, in turn, has been expressly extended to habeas corpus petitions lodged by immigration detainees, Mapp v. Reno, 241 F.3d 221 (2d Cir. 2001), where the court of appeals correctly concluded that in extending this settled tenet of habeas corpus jurisdiction to petitions by immigration detainees, "we are not required to break new ground so much as to revisit a place where we have been before." Mapp v. Reno, 241 F.3d at 225. The Mapp court's analysis of this issue is consistent with case law in this circuit, Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986), is highly persuasive, and this court has previously cited Mapp's analytical paradigm with approval. See Nasr v. Hogan, No. 08-415, 2008 WL 2705533 (M.D.

Pa. July 10, 2008).

As a general rule, "courts that have been faced with requests for bail [in habeas proceedings] have developed standards requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both." Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986). In the context of bail petitions by immigration detainees seeking relief in federal habeas corpus proceedings, "a court considering a habeas petitioner's fitness for bail must inquire into whether 'the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.' Iuteri, 662 F.2d at 161; see also Grune, 913 F.2d at 44." Mapp v. Reno, 241 F.3d 221, 230 (2d. Cir. 2001). With respect to this standard:

> When other district courts . . . have applied the[ese] standards . . . , "[a]n essential factor ... [has been] the necessity that the petition present merits that are more than slightly in petitioner's favor." Richard v. Abrams, 732 F.Supp. 24, 25 (S.D.N.Y.1990) (citing Rado v. Manson, 435 F.Supp. 349, 350-51 (D.Conn.1977) (holding that petitioner must be (1) "an exceptionally strong candidate for bail" and make (2) claims of a "substantial nature upon which [he] has a high probability of success"); Rado v. Meachum, 699 F.Supp. 25, 26-27 (D.Conn.1988) (holding that the relevant factors are whether (1) "substantial claims" are set forth in the petition; (2) there is a "demonstrated likelihood the petition will prevail"; and (3) there are "extraordinary circumstances" attending the petitioner's situation which would "require" the grant in order to make the writ of habeas corpus "effective," presumably if granted) (citing Stepney v. Lopes, 597 F.Supp. 11, 14 (D.Conn.1984)); accord Harris v.

United States, 1997 WL 272398, at *1.

D'Alessandro v. Mukasey, 2009 WL 799957 at *3 (W.D.N.Y. 2009).

Therefore, as a threshold matter, the petitioner bears the burden of showing that this case presents extraordinary circumstances warranting bail consideration. In making this threshold determination we are cautioned to consider both the merits of the claims made in the petitioner's habeas corpus petition, and to ascertain whether the case presents exceptional circumstances which make the petitioner a proper candidate for bail. As part of this process, we also must assess whether "'extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.'" Mapp v. Reno, 241 F.3d at 230. These "extraordinary circumstances" may, in proper instances, include medical considerations relating to the petitioner's health, family and medical needs. D'Alessandro v. Mukasey, 2009 WL 799957 at *3.

Once it is determined that the petitioner has made the threshold showing that extraordinary circumstances exist which justify the exercise of this court's habeas corpus jurisdiction, the burden of proof then shifts to the respondents. As the United States Court of Appeals for the Third Circuit has expressly found in this setting where we are considering the alleged unreasonable detention of an immigration detainee "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is

necessary to fulfill the purposes of the detention statute." <u>Diop v. ICE/Homeland Sec.</u>, 656 F.3d 221, 233 (3d Cir. 2011).

In the instant case we are called upon to reconcile our obligation to provide an appropriate degree of deference to the judgment of an agency on matters within the jurisdiction of that agency, with our independent obligation to make bail determinations in federal habeas corpus cases. Recognizing the concurrent jurisdiction and responsibilities of this court and the Immigration Judge in these bail matters, and "[m]indful of the deference which should be accorded in the first instance to agency decision-making processes," <u>Leslie v. Holder</u>, 865 F. Supp. 2d 627, 631 (M.D. Pa. 2012), we will defer to the Immigration Judge to make a prompt individualized bail determination, while retaining jurisdiction to conduct our own bail review, if necessary, under the standards governing bail in habeas corpus proceedings.

An appropriate form of order follows:

## **ORDER**

AND NOW, this $8^{h}$ day of January 2016, IT IS ORDERED as follows:

1. On or before **February 8, 2016**, an Immigration Judge shall afford the petitioner an individualized bail hearing, consistent with the legal benchmarks outlined in the accompanying memorandum of law.

2. At this hearing the Immigration Judge must make an individualized inquiry into whether detention is still necessary to fulfill the purposes of ensuring that the petitioner attends removal proceedings and that his release will not pose a danger to the community. <u>Chavez-Alvarez v. Warden York Cnty. Prison</u>, 783 F.3d 469, 475 (3d Cir. 2015). Further, at this hearing the Government bears the burden of presenting evidence and proving that continued detention is necessary to fulfill the purposes of the detention statute. <u>Diop v. ICE/Homeland Sec.</u>, 656 F.3d 221, 233 (3d Cir. 2011).

3. The parties shall report to this court on the outcome of this individualized bail determination on or before **February 10, 2016**.

4. If necessary, this court will conduct further proceedings consistent with the legal standards articulated in this order at a hearing which is scheduled for **February 18, 2016 at 1:30 p.m.** in Courtroom 5, United States Courthouse, Harrisburg, Pennsylvania.

<u>***S/Martin C. Carlson***</u>
Martin C. Carlson
United States Magistrate Judge